UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

IN RE HURRICANE SANDY CASES

------------------------------------------------------------X

**MEMORANDUM &
ORDER RE: *RAIMEY*
RECONSIDERATION
AND CLARIFICATION
MOTIONS**

14 MC 41

On November 7, 2014, Magistrate Judge Brown issued a Memorandum and Order in

*Raimey v. Wright National Flood Insurance Co.*, No. 14-CV-461, one of the more than 1,000

Hurricane Sandy cases presently being managed by the undersigned Committee of Magistrate

Judges.    No. 14-MC-41, Docket Entry ("DE") [637]; *In re Hurricane Sandy Cases*, No.

14-MC-41, -- F.R.D.--, 2014 WL 5801540 (E.D.N.Y. Nov. 7, 2014) ("November 7 Order").

Familiarity with the facts set forth in the November 7 Order is assumed.    In the November 7

Order, Judge Brown reaffirmed that defendants in all Hurricane Sandy cases must produce the

reports and materials under CMOs 1 and 3.    For avoidance of doubt as to the scope of those

orders, Paragraph 3 of the November 7 Order directed the defendants to provide the following:

> *any drafts, redlines, markups, reports, notes, measurements, photographs and
> written communications related thereto*— prepared, collected or taken by any
> engineer, adjustor or other agent or contractor affiliated with any defendant, relating
> to the properties and damage at issue in each and every case, *whether such
> documents are in the possession of defendant or any third party*.

November 7 Order at 26-7.    Defendants were given to December 12, 2014—35 days—to provide

those materials.

On November 20, 2014, the Committee issued CMO 12, reiterating the portion of the

November 7 Order that affects cases other than *Raimey*.    The Committee further noted "the

*Raimey* Order finds that these materials 'clearly fall within the ambit of CMO 1 and 3.' The

Committee agrees with this construction of its existing discovery Orders."    CMO 12, DE [672] at

1

n.1.   Following the November 7 Order and CMO 12, FEMA and other defendants filed more than 100 motions for reconsideration and clarification of those directives and, in many instances, filed parallel objections to Judge Brown's determination, which are incorporated by reference into the motions for reconsideration.[1]

This Memorandum and Order rules on all of the arguments raised in the scores of submissions filed by defendants that relate to Paragraph 3 of the November 7 Order; the arguments addressed specifically to *Raimey*, *see* No. 14-CV-461, DE [95], [96], [97], will be dealt with in a separate order.   As discussed herein, the motions for reconsideration are largely denied, although certain matters are clarified herein.   Additionally, based upon evidence submitted by plaintiffs in *Raimey* purportedly demonstrating additional evidence of improper practices in connection with engineering reports, we grant plaintiffs' application for an evidentiary hearing on these issues.

## I.      *Raimey* Issues Affecting All Cases

Despite the barrage of filings by defendants in these cases, the motions for reconsideration, clarification, and objections raise four primary arguments: (a) defendants other than the defendant in *Raimey* did not have an opportunity to be heard; (b) the court unfairly extrapolated from evidence by a single engineer to impose new obligations upon all defendants; (c) the order imposed

---

[1]  The filed motions for reconsideration include the following: No. 14-MC-41, DE [679], [685], [690], [692], [695], [698] (styled as "Letter"), [699], [700], [702], [703], [704], [706], [707], [709] (styled as "Letter"), [710], [711], [712], [713] (styled as "Letter"), [716], [717], [720], [721], [723], [729], [731], [733], [740], [743], [747], [748], [751], [752], [753], [755], [756], [758], [760], [761], [763], [764], [765], [768], [769], [770], [778], [780], [782], [784], [785], [786], [787], [788], [789], [790], [792], [793], [796], [797], [798], [799], [800], [811]; No. 13-CV-5997, DE [85]; No. 14-CV-123, DE [81]; No. 14-CV-166, DE [77]; No. 14-CV-168, DE [76]; No. 14-CV-169, DE [75]; No. 14-CV-170, DE [76]; No. 14-CV-171, DE [77].   The parties have also filed the following notices of objections: No. 14-MC-41, DE [680], [682], [683], [686], [687], [688], [689], [691], [693], [694], [696], [697], [701], [705], [708], [714], [715], [719], [722], [724-728], [730], [732], [734], [735], [736], [737], [738], [739], [741], [742], [744], [745], [746], [749], [754], [757], [759], [762], [766], [767], [771], [772], [773], [774], [775], [776], [777], [779], [781], [783], [791], [795], [812]; No. 13-CV-5411, DE [84]; No. 13-CV-7282, DE [93]; No. 14-CV-1001, DE [66]; No. 14-CV-4857, DE [27]; No. 14-CV-6345, DE [14]; No. 14-CV-6338, DE [12].   Additional filings include the following: No. 14-MC-41, DE [681] (notice of objections for all "wind" carriers), [684] (appeal of magistrate's decision), [718] (notice of objections specific to *Raimey v. Wright National Flood Insurance Company*, No. 14-CV-461), [750] (motion for reconsideration incorporating notice of objections in DE [718]).

on defendants should also be applied to plaintiffs; and (d) the burden on defendants is too great.

*See, e.g.*, FEMA Brief, DE [679]-1.

As an initial matter, several of these arguments rest on mistaken assumptions or a misreading of this Committee's prior orders. One such mistake is the notion that, in directing the production of draft reports, "the November 7 Order greatly increases the automatic disclosure obligations of FEMA and other defendants." FEMA Brief, DE [679]-1 at 4. However, this assertion, uniformly adopted by WYO defendants in virtually all of these filings, is flatly untrue.[2]

CMO 1, issued in February 2014, provides the following:

> Documents routinely prepared in the ordinary course of business, including but not limited to *adjusters' reports and other expert analyses, including draft reports*, are not privileged and *should be produced*.

CMO 1, DE [243] at 10 (emphasis added). As Judge Brown noted in the November 7 Order:

> since February 2014, defendant has been under unequivocal and repeated Court direction to produce all expert reports, photographs and 'written communications that contain any description or analysis of the scope of loss or any defenses under the policy.' Yet, Hernemar's December 9 report, the redline document that transformed that report into the January 7 report, as well as a bevy of email communications surrounding the creation, transmission and modification of these documents – all of which clearly fall within the ambit of CMO 1 and 3 – have never been produced.

November 7 Order at 16; *id.* at 18 (discussing "production of draft reports – and, to be clear, CMO 3 unequivocally so directs"). It is notable that in the course of preparing and filing hundreds of applications—all at taxpayer expense—attorneys for the WYO defendants seemingly failed to read the first Case Management Order in this case, which explicitly required the production of, among other things, draft reports. *See* CMO 1 at 10. This straightforward provision undermines several of the arguments raised and, largely

---

[2] To the extent that the November 7 Order references any "additional" obligations, see, e.g., November 7 Order at 25 (stating "additional discovery"), the Order is hereby clarified to indicate only that previously existing discovery obligations were being reiterated.

renders the motions meritless.    With that as background, we turn to the arguments individually.

### A.   *Opportunity to Be Heard*

Defendants claim that the November 7 Order "overlooks all other defendants' due process rights," as the Order "greatly increases the [discovery] obligations . . . without giving all defendants, not just the defendant in the *Raimey* case, the opportunity to be heard on this issue." FEMA Brief at 4-5; *see also* DE [681] (contending that non-WYO carriers "were not afforded an opportunity to be heard").    This argument fails for several reasons.

First, as noted above, the discovery obligations reiterated in the November 7 Order and CMO 12 existed prior to and independent of the evidentiary hearing in *Raimey*.    Thus, all parties had input into, and an opportunity to be heard with respect to the issue of draft reports in connection with the issuance of CMO 1 in February.    Further, the period to object to this provision—and no party lodged any such objection—expired long ago.

Among the issues explored in *Raimey* is the failure of defendant Wright to gather and produce the requisite materials.    Moreover, given the shadowy, undocumented nature of the "peer review" process revealed in the evidentiary hearing, it became clear that defendants required direction to ensure that such oversights—which in the *Raimey* case seemingly caused significant injustice—had not occurred in other cases as well.    Thus, the restatement of these requirements in the November 7 Order and CMO 12 was fully appropriate, and not in derogation of the rights of any party.

Second, even assuming, *arguendo*, that the discovery obligations discussed in the November 7 Order and CMO 12 did not pre-date the *Raimey* dispute, the notion that FEMA and the other WYO carriers were not "represented" is simply fallacious.    As the WYO carriers frequently remind this Court, Wright, like the other WYO carriers, "appears herein in its

'fiduciary' capacity as the 'fiscal agent of the United States.'"    Wright Brief, DE [718] at 2 (*citing* 44 C.F.R. §62.23(f); 42 U.S.C. §4071(a)(1); *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179 (2d Cir. 2006); *Gowland v. Aetna Cas. & Surety Co*., 143 F.3d 951, 953 (5th Cir. 1998)).    In that role, counsel is required to coordinate a joint defense with FEMA on behalf of that agency.    *See* Federal Emergency Management Agency, *National Flood Insurance Program Guide for Write Your Own Counsel,* No. 14-CV-461, DE [100]-7 at 10 ("WYO Company counsel has an affirmative obligation to keep FIA and FEMA OGC informed about material aspects of a NFIP-related lawsuit").    And, according to Wright's counsel, this went beyond the theoretical in this instance.    Specifically, attorneys for Wright represent to this Court that the defenses raised in *Raimey* were

> made only after consultation with counsel for FEMA, the agency charged with administrative responsibility for the NFIP, and with the explicit concurrence of FEMA's counsel. Federal regulations directly on point require WYO carrier defense counsel to coordinate with FEMA's counsel concerning NFIP litigation. That is exactly what happened here. The Order erroneously gave no deference to the agency position . . .

Wright Brief, No. 14-CV-461, DE [95] at 4-5; *see also* DE [96] (Wright's motion for reconsideration incorporating arguments from DE [95] Wright's notice of objections).    This directly undercuts the claim that "FEMA did not have an opportunity to be heard and weigh in on the issues addressed at the evidentiary hearing in the *Raimey* case."[3]    FEMA Brief, DE [679] at 2.

Finally, to the extent any party was denied an opportunity to be heard—which does not appear to be the case—consideration of those parties' submissions on the instant motions for reconsideration provides a mechanism to correct any absence of an opportunity to be heard.    *See,*

---

[3] In these applications, counsel objects to the application of the November 7 Order to "parties who had no knowledge or notice of the events and proceedings in Raimey."    DE [718] at 7.    Of course, some of the most significant issues discussed in the November 7 Order arose from the conduct of Wright's counsel at the evidentiary hearing.    It bears noting that the very same attorneys who appeared before the Court at the evidentiary hearing filed many of the motions for reconsideration.    *See, e.g.*, No. 14-MC-41, Docket Entry ("DE") [685], [689], [690], [692], [695], [696], [700], [701], [702], [703], [706], [708], [711], [712], [715], [716], [720], [721], [722], [723], [726], [727], [728], [729], [731], [734], [741], [750], [756], [757], [759], [811], [812].

*e.g., Bassé Frères Alimentation Orientale (2013) Inc. v. Frunut Global Commodities L.L.C.,* No. 14 CIV. 0818 ALC JCF, 2014 WL 6467001, at *2 (S.D.N.Y. Nov. 18, 2014) (granting reconsideration and adhering to prior decision where plaintiff "contend[ed] that it did not "have a full and fair opportunity to make a comprehensive submission on the discovery issues which were addressed in the Order"); *Lopez v. City of New York,* No. 11-CV-2607 CBA RER, 2012 WL 2250713, at *1 (E.D.N.Y. June 15, 2012) (granting reconsideration and keeping the previous order in effect where "defendants initially did not have the opportunity to submit written opposition to the Plaintiffs' motion"); *cf. Pandozy v. Tobey*, 335 F. App'x 89, 92 (2d Cir. 2009) (plaintiff "had a full opportunity to respond to the possibility of sanctions in his objections to the magistrate judge's report").    The Committee has reviewed all of the submissions—which include both legal argument and certain factual material—and finds that, but for the minor exceptions noted herein, the findings and conclusions of the November 7 Order were correct and appropriate, and that no facts or controlling law was "overlooked."    *See* Local Civ. R. 6.3 (memorandum accompanying motion for reconsideration must contain "matters or controlling decisions which counsel believes the Court has overlooked").

### B.    Bases for the Application of the Raimey *Decision to Other Hurricane Sandy Cases*

In a slight variation of the first argument, defendants assert that Judge Brown erred by applying the determination in the November 7 Order to defendants in cases other than *Raimey*. Specifically, FEMA claims "Paragraph 3 of the November 7[th] Order overlooks the diversity of fact and circumstances among individual Hurricane Sandy flood litigation cases."    FEMA Brief at 5. Indeed, FEMA contends that the "Court's order extrapolates evidence uncovered in the *Raimey* case to all cases (wind and flood) and imputes the conduct of U.S. Forensic and the testimony of one engineer, George Hernemar, to all engineering firms and to all independent adjustors."    *Id.*

This argument similarly fails chiefly because, as discussed in detail above, the obligation to

provide draft reports from engineers and adjustors arose from CMO 1, and hence preceded the

dispute in *Raimey*.    Additionally, FEMA's statement of the facts in *Raimey*—which has been

uniformly adopted by defendants—mischaracterizes the evidence.    The decision in *Raimey* was

*not* based on the testimony of a single engineer or occurrence.    Rather, the November 7 Order

found that the so-called "peer review" process "was limited neither to this one engineer, nor

specifically to U.S. Forensic."    November 7 Order at 13 (citing sworn testimony by two engineers

about hundreds of engineering reports that had been subject to "peer review" and that such

practices were standard "across the field of engineering").


### C.  Mutuality

In their submission, the non-WYO carriers set forth the following:

> If the Sandy committee views the disclosure requirements detailed in paragraph
> three of the *Raimey* Order as simply an amplification of what was required by CMO
> No. 1, then we respectfully request that the disclosure obligations set forth in
> paragraph 3 be made applicable to both plaintiffs and well as the defendants.
> Engineers are commonly retained by plaintiffs and defendants alike in insurance
> coverage litigation. Engineers for plaintiffs and defendants commonly write draft
> reports and make revisions. Likewise, both plaintiffs and defendants may have
> adjusters or other agents and relevant materials, photographs, and draft written
> communications, also referenced in paragraph 3 of the Order. The Federal Rules of
> Civil Procedure and the Eastern District of New York's Local Rules set forth rules
> for discovery that apply equally to all parties. The even-handedness of the Federal
> Rules would be undermined by imposing disclosure obligations solely upon
> defendants, as paragraph 3 of the Order does. There is no basis to apply the
> amplification solely upon defendants and not plaintiffs.

DE [681] at 2.    This cogent, well-reasoned argument is entirely correct.[4]    While the language of

the November 7 Order is aimed at defendants—as it was formulated in response to demonstrable

discovery failures on the part of a defendant—the requirements set forth in CMO 1 and reiterated

---

[4]  It is also worth noting that, unlike the barrage of motions and applications submitted by FEMA and the WYO
carriers, the submission on behalf of the non-WYO carriers efficiently set forth their position in a thoughtful, two-page
letter.

in the November 7 Order apply equally to plaintiffs. While the December 12 deadline does not apply to plaintiffs specifically, if plaintiffs have failed to provide drafts or otherwise comply with requirements contained in the CMOs, those failures should be addressed forthwith.

### D. Burden

Lastly, defendants argue that the burden of complying with the November 7 Order, and by extension, the requirements of CMO 1, warrants rescission of these requirements or extension of the time requirements. Specifically, FEMA contends that "[g]iven that FEMA, and the participating WYO carriers, do not have direct access to draft, redlined, and marked-up versions of engineering reports generated during the adjustment process, taking efforts to obtain these materials would come at a great . . . cost to the public fisc." DE [679]-1 at 8. It is difficult to compare the "burden" on FEMA and the insurance carrier defendants in producing a set of documents to the burdens faced by plaintiffs—storm victims who may have been unjustly denied recovery for damage to or destruction of their homes. Moreover, defendants' purported need for more time rings hollow in light of the fact that these materials should have been produced many months ago.

Notwithstanding the foregoing, at the November 25 conference, the Committee made provision to assist defendants who may have problems obtaining these documents from third party firms. At the conference, the Committee directed that, to the extent that any defendant could not obtain the subject material by December 12, such defendants are authorized to issue a subpoena to the third-party firms to secure the materials. Those subpoenas should have a return date of fourteen days from the date of issuance, such that the materials should be produced before the end of this month. Upon receipt, the materials should be provided in their entirety to the plaintiffs.

## II.     Plaintiffs' Request for an Evidentiary Hearing

In response to the motions to reconsider particular to the *Raimey* case, plaintiffs' counsel in *Raimey* submitted a number of documents purportedly demonstrating practices similar to those established in the *Raimey* case.    *See* No. 14-CV-41 DE [830]; 14-CV-641 DE [100].    Based upon the material submitted, counsel has sought an evidentiary hearing on these matters.    Plaintiffs' Liaison Counsel has also submitted similar materials in opposition to the motions to reconsider. *See* DE [841].    Because the implications of such a hearing extend beyond the *Raimey* case, we address this request in this Order.

Counsel alerted the Committee to four apparent instances of improper practices with respect to damage reports relied upon by insurance carriers, several of which affect pending cases.    For example, in *Shlyonsky v. Travelers Insurance Co.*, 13-CV-05393(RJD)(JMA), and *Dweck v. Hartford Insurance Co. of the Midwest*, 14 CV 6920 (ERK) (JMA), plaintiffs submitted documents which appear to show that another engineering firm, HiRise Engineering, rewrote the reports of the licensed inspecting engineer; in both cases the original reports which documented extensive storm damage were altered to reflect an absence of such damage or suggest pre-existing damage.    DE [830], [840], [841].    The submissions seem to suggest that the inspecting engineer's signature was apparently cut and pasted onto the modified reports.    *Id.*[5]

Similarly, plaintiffs have submitted engineering reports prepared in connection with two additional homes, one owned by Joseph and Patricia Giovinco, and the other owned by Sang Hahn. *See Giovinco et al v. Fidelity National Property & Casualty Insurance Co.*, 14-CV-3937 (ADS)(SIL).    In both cases, Michael Garove—the same engineer who conducted the "peer review" in *Raimey*, allegedly authored the U.S. Forensic engineering reports upon which the carriers relied in denying coverage.    14-CV-461, DE [100].    Plaintiffs have provided evidence

---

[5]  In fact, the materials submitted include a sworn affidavit from the inspecting engineer attesting to the fact that "Hi Rise lifted my signature and seal from the True Report and affixed said seal and signature to the False Report" and that the final report relied upon by the insurer "is a forgery."    DE [840]-5.

that Garove never inspected either of the subject homes.    Rather, plaintiffs contend, and have provided supporting documentation that engineers not licensed in New York conducted the inspections.    *Id.*    Both insureds appealed the determination that there was no flood damage, but FEMA rejected their appeals.    *Id.*

These allegations, if true, raise a number of important issues that must be resolved.    By way of example, some of the other plaintiffs may be entitled to Rule 37 relief like that afforded in *Raimey*.    However, before conducting another partial hearing, it seems prudent to await production and review of the draft reports to be produced shortly, and conduct a hearing relating to all affected cases.    As such, the Committee will hold an evidentiary hearing on these matters on January 28, 2015 at 10:00 a.m. in the Ceremonial Courtroom of the United States Courthouse, 225 Cadman Plaza East, Brooklyn, N.Y., to evaluate all claims of altered or otherwise improper practices relating to damages reports.    The prospect of this hearing, however, should not delay any of the scheduled mediations or other deadlines, and the parties should proceed accordingly.

## CONCLUSION

Based on the foregoing, with the exceptions noted herein, the motions for reconsideration and clarification of the November 7 Order and CMO 12 are DENIED.    As such, defendants are directed to comply with the provision to supply the materials described in the November 7 Order—to the extent such material has not already been supplied—by December 12.    If these materials cannot be obtained by request, defendants are authorized to issue subpoenas for that purpose, consistent with the provisions set forth herein.

Moreover, as discussed above, the Committee will hold a hearing in the Ceremonial Courtroom of the Brooklyn Courthouse on Wednesday, January 28, 2015 at 10:00 am to explore the issues set forth in Section II of this opinion.    At least ten days before, Liaison Counsel shall

submit briefs detailing proposed matters to be considered at the hearing, including a list of witnesses and copies of all exhibits to be offered.

**SO ORDERED**.

Dated: Brooklyn, New York
December 8, 2014

　/S/　　　CHERYL L. POLLAK
Cheryl L. Pollak
United States Magistrate Judge

/S/　　　GARY R. BROWN
Gary R. Brown
United States Magistrate Judge

/S/　　　RAMON E. REYES, JR.
Ramon E. Reyes, Jr.
United States Magistrate Judge